NOS. 12-00-00372-CR


 12-00-00373-CR



IN THE COURT OF APPEALS
 


TWELFTH COURT OF APPEALS DISTRICT



TYLER, TEXAS


JOHN MATTHEW DOWNING,
§
 APPEAL FROM THE 173RD

APPELLANT


V.
§
 JUDICIAL DISTRICT COURT OF


THE STATE OF TEXAS,

APPELLEE
§
 HENDERSON COUNTY, TEXAS

 

 John Matthew Downing pleaded guilty to two cases of possession of a controlled substance. 
Pursuant to the terms of the plea bargain agreements, the trial court sentenced him to twenty-two
years of confinement in one case and twenty years of confinement in the other case, to run
concurrently. In his sole issue, he asserts the trial court erred in denying his motion to suppress in
each case. We affirm. 

 Kay Langford, an investigator for the Henderson County Sheriff's Department, testified at the
hearing on Appellant's motions to suppress. She explained that, at about noon on May 11, 2000, a
confidential informant told her that a woman named Peggy Scott, or her daughter, would be dropping
Appellant off at the Budget Inn in Athens. Appellant was going to be delivering drugs to Janice
Atwater in a motel room. The informant said Appellant would be in possession of drugs when he
arrived and when he left the motel. The drugs would be in a black bag he would carry with him. The
informant told Langford Appellant would have "speed," which is methamphetamines or
amphetamines. Langford testified that she had spoken with this informant numerous times and used
this informant on prior occasions. Langford considers this informant, who had given her true and
correct information in the past, to be reliable. Also, Langford contacted an ex-narcotics officer,
Bryan Nutt, who had used this informant on prior occasions and found the informant to be reliable
and credible because he/she had given accurate information in the past. Based on that information,
Langford set up a surveillance team to watch for Appellant's arrival at the Budget Inn. Based on
information provided by the Athens Police Department, the investigators knew Scott owned a 1973
gray, four-door, Toyota sedan.

 A small, gray car drove into the motel's parking lot about 4:25 p.m. One of the investigators
participating in the surveillance, Kalon Rollins, recognized Appellant when he exited from the
vehicle. There were also two females in the car. Appellant walked upstairs and went into a motel
room. He was carrying a small, black bag, the size of a shaving kit. Detective Brett Morman,
testified that both females also went upstairs to the room and one, later identified as Margie
Whettington, came back out and drove the car away. Another investigator, Ray Nutt, testified that
only one female accompanied Appellant up to the room and Whettington drove away without ever
exiting the car. All agree that Appellant stayed in the room when Whettington drove away and that
she returned about twenty or thirty minutes later. Appellant, still carrying the black bag, came back
downstairs and got in the front passenger seat of the car. Whettington drove the car away again. The
other female, Peggy Scott, remained in the motel room. 

 Law enforcement officers, in at least two different vehicles, followed the gray car. A police
officer in a marked vehicle was instructed to stop the car. As the car was moving over to the
shoulder, Appellant hung his right arm out of the window holding the black bag. He then threw the
bag toward the front of the car. It bounced off the guard rail and landed on the pavement in front of
the car. Officers found methamphetamine, amphetamine, and drug paraphernalia in the bag. After
Appellant was arrested, Langford returned to the motel room where she found Scott and Janice
Atwater. However, contrary to the informant's claim that Appellant was selling drugs to Atwater,
no drugs were found on her. 

 In his sole issue, Appellant contends the trial court erred in denying his motions to suppress
the evidence found in the black bag. He asserts the record shows the State failed to establish the
reliability of the confidential informant and therefore the police did not have reasonable suspicion
to support the initial stop of the vehicle and detain Appellant. As the detention was illegal, the
argument continues, the evidence obtained in the ensuing search was inadmissible and his motions
to suppress should have been granted.

 A trial court's decision on a motion to suppress is reviewed under an abuse of discretion
standard. Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). An appellate court should
give almost total deference to a trial court's determination of historical facts supported by the record,
especially when the trial court's fact findings are based on an evaluation of credibility and demeanor. 
Id. We consider de novo issues that are purely questions of law, such as whether reasonable
suspicion existed at the time of the search or seizure. Id. at 87.

 An officer may temporarily stop and investigate a vehicle if the officer has reasonable
suspicion based on articulable facts that the detainee is connected to unusual activity with some
indication that the activity is related to a crime. Stone v. State, 703 S.W.2d 652, 654 (Tex. Crim.
App. 1986). The test for "reasonable suspicion" requires consideration of the totality of the
circumstances confronting the police. Sandoval v. State, 860 S.W.2d 255, 258 (Tex. App.-Houston
[1st Dist.] 1993, pet. ref'd). Reasonable suspicion is dependent upon both the content of the
information possessed by police and its degree of reliability. Alabama v. White, 496 U.S. 325, 330,
110 S. Ct. 2412, 2416, 110 L. Ed. 2d 301 (1990). A confidential informant can provide the requisite
reasonable suspicion to justify an investigative detention provided additional facts are present to
demonstrate the informant's reliability. See Carmouche v. State, 10 S.W.3d 323, 328 (Tex. Crim.
App. 2000). The reasonable suspicion required does not rise to the level of probable cause such as
is required to justify a warrantless search or arrest. Stone, 703 S.W.2d at 654. 

 The officers were acting on information received by Investigator Langford from a confidential
informant. This informant had proved to be reliable in the past. Langford testified that she believed
the informant to be credible based on past dealings with the informant. The informant identified
Appellant and two other participants in the drug transaction by name. Based on that information, the
officers were able to determine the make and model of the vehicle Appellant would be arriving in. 
The informant identified the date and approximate time of the transaction and the location where the
transaction would occur. The informant also said Appellant would be carrying a black bag containing
narcotics. At the time of the stop, observation by the officers had confirmed most of the informant's
information, except for the presence of narcotics. Further, Detective Morman testified that it is not
uncommon for drug deals to occur in motel rooms and there has been drug activity at the Budget Inn
in the past. Based on the totality of the circumstances, we conclude that the law enforcement officers
possessed sufficient reliable information based on which they could form the requisite reasonable
suspicion at the time of the stop. See Carmouche, 10 S.W.3d at 328 (warrantless stop of vehicle was
constitutionally justified based on informant's tip that defendant was transporting cocaine, her prior
history of providing reliable information, and corroboration of her information by officers'
observations); Fonseca v. State, 881 S.W.2d 144, 150 (Tex. App.-Corpus Christi 1994, no pet.)
(officers had reasonable suspicion relying on information obtained from reliable informant,
substantiated by police observation). 

 Further, as the car was moving to the shoulder and slowing to stop, Appellant abandoned the
contraband by throwing it out of the window on to a public road. The Fourth Amendment does not
protect those who voluntarily abandon property. Abel v. United States, 362 U.S. 217, 241, 80 S. Ct.
683, 698, 4 L. Ed.2d 668 (1960). Voluntary abandonment occurs if: (1) the defendant intended to
abandon property, and (2) the decision to abandon the property was not induced by police
misconduct. Brimage v. State, 918 S.W.2d 466, 507 (Tex. Crim. App. 1996) (on reh'g). Intent may
be inferred from words spoken, acts done, and other objective facts. Armstrong v. State, 966 S.W.2d
150, 153 (Tex. App.-Austin 1998, no pet.). If a person throws an object into an area open to the
public he has abandoned his property for search and seizure purposes. Id. Appellant's act of
throwing the bag containing illegal narcotics on to a public road shows the intent to abandon the
contraband. We have determined that the stop was legal. Therefore, the abandonment was not
induced by police misconduct. As the stop was constitutionally justified and Appellant abandoned
the contraband, the trial judge did not err in denying Appellant's motions to suppress. We overrule
Appellant's sole issue.

 We affirm the trial court's judgments.

 SAM GRIFFITH 

 Justice

Opinion delivered April 12, 2002.

Panel consisted of Davis, C.J., Worthen, J., and Griffith, J.




(DO NOT PUBLISH)