RECEIVED IN
COURT OF CRIMINAL APPEALS

May 6, 2015

ABEL ACOSTA, CLERK

NO. _____

IN THE COURT OF CRIMINAL APPEALS OF TEXAS
AUSTIN, TEXAS

JORGE ALVAREZ GOMEZ,
Appellant/Petitioner,

V.

THE STATE OF TEXAS,
Appellee/Respondent.

APPELLANT'S PETITON FOR DISCRETIONARY REVIEW

_____

No. 04-14-00198-CR
Court of Appeals for the Fourth District of Texas
At San Antonio, Texas

On Appeal from Cause Number 362070 in the County Court at Law of Bexar County,
Texas Honorable Wayne A. Christian, Judge Presiding.

Respectfully submitted,
_____//S//_____
Victor M. Valdes, J.D., Ed.D.
111 Soledad, Suite 300
San Antonio, Texas 78205
Tel. (210) 229-9652
Fax  (210) 590-6713
Bar No. 20424500
Attorney for Appellant
Email:vvaldes@satx.rr.com

APPELLANT REQUESTS ORAL ARGUMENT

# TABLE OF CONTENTS

INDEX OF AUTHORITES ……………………………………………………..…ii

STATEMENT REGARDING ORAL ARGUMENT…………………………...…….iii

STATEMENT OF THE CASE…………………………………………………….....1

STATEMENT OF PROCEDURAL HISTORY…………………………………..…....1

## GROUNDS FOR REVIEW

**FIRST GROUND FOR REVIEW**: Whether the Court of Appeals erred when it ignored Petitioners request to take judicial notice and failed to accurately recite relevant facts?....2
**SECOND GROUND FOR REVIEW**: Whether the Court of Appeals erred when it concluded that it was not a comment on the weight of the evidence?……………...…7
**THIRD GROUND FOR REVIEW**: Whether the Court of Appeals erred when it concluded Appellant was not entitled to Article 38.23 instructions?……………………..8
**FOURTH REASON FOR REVIEW**: Whether the Court of Appeals erred when Appellant was not allowed to present a defense?……………………………….…11
**FIFTH GROUND FOR REVIEW**: Whether the Court of Appeals erred when it ignored its own previous decisions in violation of The Doctrine of *Stare Decisis?*......................14

PRAYER FOR RELIEF…………………………………………………….…..14

CERTIFICATE OF SERVICE……………………………………………….…15

CERTIFICATE OF COMPLIANCE…………………………………………….........15

APPENDIX A
    Alvarez-Gomez v. State, No. 04-14-00198-CR (Tex.App.-San Antonio, delivered February 11, 2015) (Not designated for Publication).
APPENDIX B
    Alvarez-Gomez v. State, No. 04-14-00198-CR (Tex.App.-San Antonio, delivered on March 3, 2015) (Motion for Rehearing and Reconsideration *En Banc,* denied).
APPENDIX C
    Transcript of Trial Court's interaction with the State.

# INDEX OF AUTHORITIES

Chamber v. Mississippi, 410 U.S. 284 S. Ct. 1083, 35 L. Ed 2d 297 (1973)……………12

Clark v. State, 878 S.W. 2d 224……………………………………………………..…8

Crawford v. Washington, 544 U.S. 36, 51 (2004)………………………………….....16

Dawbert v. Merrill Dow Pharmaceuticals, Inc., 509 U.S. 599 (1993)……………......13,14

Ex Parte Reter, 827 S.W. 2d 324 (Tex. Cr. App. 1992)…………………………....15

Grant V. State, 738 S.W. 2d 309……………………………………………...…….10

Gifford v. State, 793 S.W. 2d 48 (1991)……………………………….…………11,17

Hewitt v. State, 734 S.W. 2d 745………………………………………...…………10

Kumho Tire Co. Ltd. v. Carmichael 526 U.S. 137, (1999)……………….…………13

Miranda v. Arizona, 384 U.S. 436 (1966)………………………………………...8

Ray v. State, 749 S.W. 2d 939 (1998)……………………………………….…11

State v. Henan, 89 Ohio St. 3d 421, 723 N.E. 2d 952……………………….…13

Stone v. State, 703 S.W. 2d 562………………………………………………...10

## RULES AND STATUTORY PROVISIONS

Sixth Amendment……………………………………………………………………9

Texas Penal Code, Section 49.0…………………………………………...…….1

Article 38.05, Texas Code of Criminal Procedure…………………………………...8

Article 38.23, Texas Code of Criminal Procedure…………………………..9,10,16

Rule of Evidence 513……………………………………………………………9

Rule of Evidence 702……………………………………………………………10

## SECONDARY SOURCES

NHTSA…………………………………………………...…...10,12,13,14

Western, The Compulsory Process Clause, 73 Mich. L.R. 72, 159 (1974)…...………11

Dr. Marceline Burns,………………………………………………….......13

Hon. Judge Edward D. Re on *Stare Decisis*……………………….…13

## STATEMENT REGARDING ORAL ARGUMENT

Appellant has raised important questions of first impression in the Court and believes that oral argument would help clarify the issues presented in this petition for discretionary review. THEREFORE he respectfully requests oral argument.

TO THE HONORABLE JUDGES OF THE COURT OF CRIMINAL APPEALS:

NOW COMES, Jorge Alvarez Gomez Appellant in this cause, by and through his attorney of record, Victor Manuel Valdes, and, pursuant to the provisions of Tex. R. App. Pro. 66, *et seq*., moves this Court to grant discretionary review, and in support will show as follows:

## STATEMENT OF THE CASE

Appellant was charge by information with driving while intoxicated, in violation of Tex. Penal Code, Section 49.01 (CR, P. 12)[1] He filed a motion to suppress evidence (intoxilyzer), on 21st of December 2011, but the trial court denied the motion who he carried with the trial, however we cannot find the order. (CR. p._).   A jury found Appellant guilty and was assessed a $500.00 fine and six months' probation and 48 hours of community service, (CR. p.41).  He timely perfected his appeal. (CR. p.45).

## STATEMENT OF PROCEDUAL HISTORY

Appellant presented five issues in his appellate brief.  The conviction was affirmed in an opinion not designated for publication, delivered on February 11, 2015.  A motion for Rehearing and Reconsideration *En Banc* was timely filed, however, it was denied on 3rd of March 2015.  On 12th of March 2015, this Honorable Tribunal granted Appellant's Motion for and Extension of Time in which to file the Petition for Discretionary Review until the 4th day of May 2015, therefore this petition is timely filed.

1.

---

[1] The record on appeal is cited as "[volume] R. [page]".

**FIRST GROUND FOR REVIEW: Whether the Court of Appeals erred when it ignored Petitioners request to take judicial notice and failed to accurately recite relevant facts?**

## ARGUMENT

The Court of Appeals opinion does fail to accurately recite the relevant facts.

Just after midnight on the 17th day of May 2011, Appellant, fell asleep in an interception near highway 281 while waiting in the truck of his friend, Mr. John Carlos Orozco. According to the police officer he noticed the "… APV with no head lights on…." The owner of the vehicle testified as follows:

Q. Mr. Orozco, would you state your full name for the record, please.

A. John Carlos Orozco.

Q. Orozco. Mr. Orozco, you know the reason you are here today?

A. Yes, sir, I do.

Q. Okay. Do you remember an incident that occurred at 11 may, 2011?

A. Yes, sir, I do.

Q. Now, also you know this young man here sitting next to me?

A. I do, very well.

Q. How long have you known him?

A. Since we were kids. We were very good friends.

Q. Do you know what he's – what he does for a living?

A. He works for Northside School District as a Counselor.

Q. Okay. Anything else he does?

A. Military service.

Q. Sir?

A. He's a Vet from the – for the military.

Q. OK.

A. As well.

Q. Now, the day of this incident, in particular on the 11th of May, 2011, you -- explain to us what you remember about that day pertaining to the stuff of Jorge.

A. On that day, um, my truck had stalled on the highway. I was the one operating, parked it. I stalled, I had battery issues, so I did walk across the street, which is literally where we were just at, picked up jumper cables a friend gave me—let me come back, which I am in the video doing that. When I came to jump my truck again, the officers were already there speaking with Mr. Alvarez.

The Court: Can everybody hear the witness? You want him to use the microphone, or everybody can hear fine? All good. Go ahead, sir.

The Witness: Um, I told 'em – I explained to one of the officers, that's my truck. He's not driving, let me have the truck.

The officer interviewing Mr. Alvarez would not let me basically say anything that had to do with that. I was – performed the test. I was—I passed everything. I was the one driving. Mr. Alvarez should have never been arrested for anything in that case for that day.

Q. (By Mr. Valdes) Now, have you prepared an affidavit to that respect?

A. Yes, sir, I have.

Mr. Valdes: you honor, I think—we can mark it.

The Court: Counsel, you have got a live witness. Why are we worrying about an affidavit?

Mr. Valdes: Well, I'd like to present it to the –

The Court: It's not admissible Counsel.

Mr. Valdes: I'm sorry?

The Court: Not admissible. You've got a witness here live to testify.

Mr. Valdes: Okay. All right.

Q. (By Mr. Valdes) But, you prepared a document to that respect before. Am I right, sir?

A. Yes, sir.

Q. Okay. Now, is that the first time that the truck it stalls on you?

3.

A. No, sir. It's not a regular truck. I have done a lot of modifications. My electrical system in not the very best. It's not the first time it stalled out on me. I do have a history with that truck.

Q. So why—why do you have an idea why it stalls?

A. Battery issues. That's the – that's the main issue on my truck.

Q. Okay. By the way, what kind of work do you do?

A. I'm a commercial truck driver. I drive across the interstate, all Texas type of loads.

Q. Okay. Have you ever been arrested?

A. Not once.

Q. Not once. Okay. And is Jorge familiar with you truck?

A. Not at all. I don't let my girlfriend drive it.

Mr. Valdes: I pass the witness, your Honor.

Appellant was sick and he was throwing up. The officer did not give him any of the field sobriety tests. He was concerned with the vomit emanating from Appellant. In addition to the testimony of Mr. Orozco, the video, indicates that Appellant was not familiar with the vehicle. At one time, he pulled the hood latch instead of the emergency brake. In the video, Appellant clearly informs the officer that he was not driving. On cross examination, Mr. Orozco testified that when he left to look for the cables, Appellant was in the passenger's seat, and that he knew that Appellant was sick and that he left and told appellant "… hey, I'm going to run around—I'm going to run across the street and get some jumper cables. Make sure no one take my truck". (Rep.'s Record, Vol. 2, page 20), at the end of the States presentation Appellant moved for a directed verdict, however, the trial court denied it. (P. 7, Vol. 2 of Rep.'s Record).

4.

Again, the Appellant requested the Court to take judicial notice of the proper proceedings of conducting the standard field sobriety test and the following colloquy followed:

Mr. Valdes: Now let's talk about motion to take judicial notice.

The Court: We have already talked about that, and that, once again, has been respectfully denied.

Oh, okay. Well, I just wanted for the record—

The Court: Respectfully denied on the record yesterday. (p.7, vol. 2 of Rep.'s Record).

On December 4, 2013, Appellant re-urged the Motion to Suppress evidence as follows:

Mr. Valdes: I still have—I'm going re-urge my Motion to Suppress, your Honor. Okay? Well, you know, there's a bunch of comments that the police officer made like "oh, that's disgusting," you know, so the fact that he is in handcuffs in front of the jury. Also, your Honor, the police officer said—

The Court: I'm sorry. Which motion to suppress are we talking about?

Mr. Valdes: I'm Sorry?

The Court: About officer making statements on the video?

Mr. Valdes: yeah. He made the statement.

The Court: It's already been denied in the nicest possible way.

Mr. Valdes: Well, your Honor before—you denied before – you denied before you listened to – watch the whole tape.

The Court: well, it's still denied.

Mr. Valdes: Okay. May I finish because—

The Court: By all means.

Mr. Valdes: Okay. Thank you, your Honor, with all respects he says that" that's too much to drink," he is supposed to be an expert on that. It's going to be misleading in front of the jury. Okay. "That is too much to drink". So that's a self-serving type of

5.

comment by the officer and "that's disgusting" that's another thing that—these comments like that and a few other comments that he made that it's completely prosecutorial that is—that tends to favor the prosecutor in this case.

That's why I think we should suppress all of the audio in this case.

The Court: you don't think people throwing up is disgusting? It absolutely is.

Mr. Valdes: Well—but the –but the—

The Court: Overruled. Your objection is noted for the record and for appellate purposes. No hard feeling. How is that?

Mr. Valdes: No hard feeling.

The arresting officer also testified that "he did not give him the HGN. (page 75, vol. 1 of Rep.'s Record). And that there are no elements that affect the test, such as wind, lights, inclines. (vol.1, Pages 78-99, of Rep.'s Record). According to the arresting officer watery eyes do not affect the HGN, red eyes, contact lenses do not affect the HGN.

**SECOND GROUND FOR REVIEW: Whether the Court of Appeals erred when it concluded that it was not a comment on the weight of the evidence?**

It is difficult to envision a more damaging situation during a trial in which the trial judge, in front of the jury, and *sua sponte,* tells the defense attorney that: "It's not admissible counsel". There will not be judge's instruction to the jury, regardless of how it is phrased, that can erase the impression on the jury.

Article 38.05 of the *Texas Code of Criminal Procedure* provides some guidance in this respect as follows: "In ruling upon the admissibility of evidence, the judge shall not discuss or comment upon the weight of the same or its bearing in the case, but shall simply decide whether or not it is admissible; …"

6.

The trial court interfered with Appellant's right to present evidence in a critical area of the case. The Court in *Clark v. State*, 878 S.W. 2d 224, 226 (Tex. App. – Dallas 1994, no pet.). indicates that: A trial court improperly comments on the weight of evidence if it makes a statement that: (1) implies approval of the State's argument, (2) indicates any disbelief in the defense's position, (3) diminishes the credibility of the defense's approach to its case".

The trial Court's erroneous ruling had a direct impact on Appellant's constitutional rights to present a defense and it cannot be considered harmless. *Rule of Evidence 513* prohibits the trial Judge from making any comment about the evidence.

**THIRD GROUND FOR REVIEW: Whether the Court erred when it concluded that Appellant was not entitled to Article 38.23, of the Code of Criminal Procedure Instructions?**

## ARGUMENT

Article 38.23 (a) provides:

> No evidence obtained by an officer on other person in violation of any provisions of the Constitution or laws of the State of Texas, or of the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of the Article, then and such event, the jury shall disregard any such evidence as obtained.

In DWI cases, as in other areas of the penal laws, the recurring question is how and when is an issue of illegally obtained evidence raised? The answer is, first, there must be a

7.

conflict in the facts, not just a conflict in the possible interpretation of an un-contradicted set of facts. Second, if there is such a conflict in the facts, and if one of the conflicting versions of the facts reasonably leads to the conclusions that the Constitution or law was violated, a charge under Article 38.23 must be given. See *Stone v. State*, 703 S.W. 2d 652 (Tex. Crim. App. 1986); *Grant v. State*, 738 S.W. 2d 309 (Tex. App.-Houston, 1987, pet. Ref.'d); *Hewitt v. State* 734 S. W. 2d 745 (Tex. App.—Fort Worth 1987, pet. Ref.'d).

There was evidence that the officer did not follow the *NHTSA* procedures during the administration of the STANDARD field Sobriety Test. Furthermore, there was evidence in the video in which the Appellant tells the arresting officer, "I was not driving" and that he was not advised of his *Miranda* rights.

The leading DWI case in Article 38.23 is *Stone v. State*, 703 S.W. 2d 652 (Tex. Crim. App. 1986), aff'g 685 S.W. 2d 791 (Tex. App Fort Worth 1985).

In this case, the officer did not see the Appellant drive the vehicle to the intersections and Appellant and the owner of the truck testified that he was sick and that the truck stalled on him because of electrical problems. Furthermore, the trial court judge believed Mr. Orozco and not the police officer. In addition, because the police officers. admitted that he did not observe Appellant continuously for fifteen minutes prior to the actual breath test, and Appellant was not allowed Article 38.23 instructions, hence, he was denied a fair trial. The Appellant objected to the evidence and filed a Motion to Suppress evidence.

On *Gifford v. State*, 793 S.W. 2d 48 (Tex. App.- Dallas 1990, pet gtd.), pet.

8.

dism'd, improvidently. Gtd., 810 S.W. 2d 225 (Tex. Crim. App. 1991), the Dallas Court held that where evidence raised an issue of whether the Defendant was continuously observed fifteen minutes prior to taking the breath test, the trial court's refusal to charge the jury on this issue was reversible error. In *Ray v. State*, 749 S.W. 2d 939, (Tex. App.-San Antonio 1998, pet. ref'd), the San Antonio Court held differently.

It is obvious, that the regulations exists for a particular purpose and should be followed at all times. The State should be held accountable for any violations of the law.

**FOURTH REASON FOR REVIEW: Whether the Court of Appeals erred when Appellant was not allowed to present a defense?.**

A defendant has a right to introduce material evidence in his favor whatever its character, unless the state can demonstrated that the jury is incapable of determining its weight and credibility and that the only way to ensure the integrity of the trial is to exclude the evidence altogether. (See Western, the Compulsory Process Clause, 73 Mich. L.R. 72, 159 (1974). The instant case is similar to *Chambers v. Mississippi*, 410 U.S. 284 S. Ct. 1083, 35 L. Ed. 2d 297 (1973). In which the Supreme Court found violations of due process and the *Sixth Amendment*. Both rulings by the trial court in *Chambers* operated to deprive the defendant of his compulsory process rights, by preventing him from attempting to elicit facts from this witness through examination, and by preventing him from introducing independent evidence of those facts. Appellant presented sufficient evidence such that the jury could find, beyond a reasonable doubt, that Appellant was not operating the vehicle, and that Mr. Orozco, the owner drove the vehicle to the intersection. In addition the evidence presented proved beyond a

9.

reasonable doubt that the arresting officer failed to follow the standard procedures as established by the *NHTSA* in the administration of the Standard Field Sobriety Test.

The only testing of field sobriety tests that meets the definition as standard was conducted at the request of the National Highway Traffic Safety Administration (hereinafter *NHTSA*) (See p. 8). Additionally, only the three standardized tests, and their standardized administration, adopted by *NHTSA* have been so evaluated. In the case at bar, the officer did not use the three tests that have been made the subject of extensive research.

The police officer admitted he does not follow the Standard procedures in conducting the HGN. (Vol. 2), pages 99-102). The field sobriety test used in this case does not meet the *Dawbert v. Merrill Dow Pharmaceuticals, Inc*. (1993) 509 U.S. 579, standards and in *Kumho Tire Co. Ltd. v. Carmichael* (1999) 526 U.S. 137, 119 S. Ct. 1167, and *Rule 702 of the Texas Rules of Evidence.*

The Appellate Court erred in approving the trial court's failure to maintain its "gatekeeping" function. The Appellant attempted to introduce documents for the trial court to take judicial notice of the proper manner of performing the HGN and factors that affect its accuracy; however, the trial court denied his requests.

The 1975, *NHTSA* funded research conducted by *Dr. Marceline Burns* found out that variance from the prescribed manner of administering, observing, and evaluating an individual's performance of the three standardized tests, deprives the tests of reliability, and accuracy. This position, that only tests given in the "standardized" manner have any

10.

validity is echoed in virtually every police manual regarding field sobriety tests.

In *State v. Homan* (April 26, 2000) 89 Ohio St. 3d 421, 732 N.E. 2d 952, The Ohio Supreme Court held that any variation in the use of the *NHTSA* Standardized Field Sobriety Tests makes the results completely unreliable as it relates to probable cause. The court found "it is well established that in field sobriety testing even minor deviations from the standardized procedures can severely bias the tests." (*Ibid*). The trial judge's refusal to allow the introduction of the *NHTSA* excerpts, amounted to a refusal of Appellant's right to present a defense. These were precisely the issues that were before the jury, and the trial judge's ruling essentially denied petitioner an opportunity to establish that a reasonable doubt existed as to his guilt.

The very concept at the heart of *Dawbert*, is the scientific mythology. The State was allowed to introduce evidence as to the HGN's reliability; hence, Appellant should have been allowed to introduce the *NHTSA* Manual in the area of proper procedures and reliability of the test.

Because the court erred in not allowing the judicial notice of the *NHTSA* Manual excerpts, the Appellant was denied the right to present a defense, and this Honorable Tribunal should reverse the Appellate Court with and order for a new trial.

**FIFTH REASON FOR REVIEW: Whether the Court of Appeals erred when it ignored its own previous decisions in violation of The Doctrine of *Stare Decisis*?**

A brief study of the doctrine of *stare decisis* indicates that it was received in the United States, as part of the common law tradition. In addition to fostering stability and permitting the development of a consistent and coherent body of law, it also served other

11.

beneficial functions. It preserved continuity, manifested respect for the past, assured equality of treatment for litigants similarly situated, spared judges the task of re-examining rules of law with each succeeding case, and afforded the law a desirable measure of predictability. See the Federal Judicial Center, article on *Stare Decisis* presented by the Hon. Edward D. Re, Chief Judge, United States Customs Court, May 13th-16th, 1975.

The doctrine of *stare decisis* commands that the Court follow settled questions of law in the absence of compelling reasons to reject them, see *Ex Parte Porter*, 827 S.W. 2d 324, 329 (Tex. Cr. App. 1992), and cases cited therein.

The Court of Appeals ignored its own previous decision in *State of Texas v. Savage*, 905 S.W. 2d 265 (1994-4th Court of Appeals). In that case, the Fourth Court of Appeals found that: the trial court's past-verdict determination that the evidence was not sufficient to support the verdict was a ruling on a matter of law...." *Ibid*, at 271.

Furthermore, because the trial court wanted the district attorney to change the charges to obstruction of a highway *vis-a vis*-DWI, and because, obviously, the Petitioner was sick and, because the trial court believed Mr. Orozco, the owner of the truck, and not the police officer. The trial court should have granted the motion for directed Verdict.

## CONCLUSIONS

The Court of Appeals ruled against Petitioner because it erroneously focused exclusively on the alleged intoxication rather than determining whether the procedural aspects and due process of law were followed. The Court concluded that "the evidence

12.

supported the jury's finding that Alvarez-Gomez was driving the vehicle while intoxicated…." (See page 3, of Appendix A). However, there was sufficient testimony indicating the opposite; in other words, that Petitioner was not driving. Therefore, Petitioner was entitled to Article 38.23 instructions. Furthermore, it was obvious, that the Petitioner was sick.

The Court of Appeals also erred when it erroneously sustained the trial courts denied the Motion to Suppress evidence. The video was obviously testimonial and Petitioner was entitled to suppress the audio. In *Crawford v. Washington*, 544 U.S. 36, 51 (2004) the Supreme Court was precise in the area of testimonial. For example, pretrial statements that the declarants would reasonably expect to be used prosecutorially are testimonial". *Ibid.*

The Court of Appeals, additionally, focused on some elements that can be easily explained. For example, the Court of Appeals found that Petitioner had "trouble standing on his own, and the audio indicates his speech is slurred". (See page 5 of Appendix A). However, it does not find that even the arresting officer recognized that Petitioner was sick and that Mr. Orozco testified that Petitioner was sick, it was a selective finding by the court.

The Appellate Court committed error by construing the attitude of the trial court as accountable. The trial court erred when it asked permission to the State to grant a new trial. The trial court erroneously asked the State for permission to grant a new trial to the detriment of the Petitioner. (See Appendix A, page 6-7).

13.

The Court of Appeals erroneously focused on the intoxilyzer results; however, it ignored the fact that the procedures leading to the tests were not observed. There is a mandatory waiting period of 15 to 20 minutes in which the defendant is observed. This observation period was not complied with and, as a result, Petitioner's rights were violated. This observation period is crucial in situations where in the present case, Petitioner was vomiting and was sick. (See *Gifford v. State*, 793 S,W, 2d 48(1991)

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, Appellant respectfully prays that this court grant discretionary review and, after full briefing on the merits, issue an opinion reversing the Court of Appeals' judgment and remanding the cause to the trial court for a new trial.

Respectfully submitted,
_____**//S//**_____
Victor M. Valdes, J.D., Ed.D.
SBN 20424500
111 Soledad, Suite 300
San Antonio, Texas 78205
Tel. (210) 229-9652
Fax (210) 590-6713
Email:vvaldes@satx.rr.com

## CERTIFICATE OF SERVICE

I, Victor M. Valdes, hereby certify, by affixing my signature above, that a true and correct copy of the foregoing *Petition for Discretionary Review* was emailed to Nathan E. Morey, nathan.morey@bexar.org, Officer to the Bexar County District Attorney. Also, mailed through the U.S. Postal Service to, Lisa McMinn, P.O. Box 13046, Capital Station, Austin, Texas 78711, on this day, May 4th 2015.

_____//S//_____
Victor M. Valdes, J.D., Ed.D
SBN 20424500
111 Soledad, Suite 300
San Antonio, Texas 78205
Tel. (210) 229-9652
Fax  (210) 590-6713
Email:vvaldes@satx.rr.com

## CERTIFICATE OF COMPLIANCE

I, Victor M. Valdes, certify that, pursuant to Texas Rules of Appellate Procedure 9.4(i)(2)(B) and 9.4(i)(3), the above Petition for Discretionary Review contains 3,655 words according to the "word count" feature of Microsoft Office.

Respectfully submitted,
_____//S//_____
Victor M. Valdes, J.D., Ed.D.

15.

# APPENDIX A

Jorge Alvarez Gomez,
Appellant,
v.

The State of Texas
Appellee.


Cause No. 04-14-00198-CR

Decision by the Fourth Court of Appeals dated February 11, 2015



# Fourth Court of Appeals
## San Antonio, Texas

### MEMORANDUM OPINION

No. 04-14-00198-CR

Jorge ALVAREZ-GOMEZ,
Appellant

v.

The STATE of Texas,
Appellee

From the County Court at Law No. 6, Bexar County, Texas
Trial Court No. 362070
Honorable Wayne A. Christian, Judge Presiding

Opinion by: Marialyn Barnard, Justice

Sitting: Sandee Bryan Marion, Chief Justice
Marialyn Barnard, Justice
Patricia O. Alvarez, Justice

Delivered and Filed: February 11, 2015

AFFIRMED

Jorge Alvarez-Gomez was found guilty by a jury of driving while intoxicated. On appeal, Alvarez-Gomez raises four points of error asserting: (1) the evidence is insufficient to support the jury's verdict; (2) the trial court erred in denying his motion to suppress; (3) the trial court erred in denying an exclusion instruction under Article 38.23 of the Texas Code of Criminal Procedure; and (4) the trial court erred in conducting plea negotiations with the State. We affirm the trial court's judgment.

## BACKGROUND

On May 17, 2011, San Antonio Police Officer David Luther was on patrol when he saw a vehicle stopped at a turnaround point on U.S. Highway 281. Officer Luther approached the vehicle to investigate and found Alvarez-Gomez slumped over the steering wheel with the vehicle in drive. When Officer Luther asked Alvarez-Gomez to put the vehicle in park, he noticed that Alvarez-Gomez was slow to react, and there was a strong odor of intoxicants. After ensuring the vehicle was in park, Officer Luther asked Alvarez-Gomez to step out of the vehicle. Alvarez-Gomez had difficulty standing up by himself, and his speech was slurred. Officer Luther asked whether he had been drinking, and Alvarez-Gomez responded affirmatively. After Officer Luther conducted a horizontal gaze nystagmus ("HGN"), a field sobriety test, he arrested Alvarez-Gomez. Alvarez-Gomez consented to a breath alcohol test which measured his breath alcohol content at .175 grams of alcohol per 210 liters of breath.

Alvarez-Gomez was charged by information with the offense of driving while intoxicated, to which he pled not guilty. A jury found him guilty, and the trial court sentenced him to six months confinement, probated for six months, and a $500 fine. Alvarez-Gomez appeals.

## SUFFICIENCY OF THE EVIDENCE

Alvarez-Gomez's challenge to the sufficiency of the evidence focuses on whether he was operating a motor vehicle while intoxicated. Alvarez-Gomez contends he was not driving the vehicle. He asserts that the person driving the vehicle went for help when the vehicle stalled in the turnaround.

A.    Standard of Review

In reviewing the sufficiency of the evidence to support a conviction, we view the evidence "in a light most favorable to the verdict" to determine whether "a rational jury could have found the essential elements of the offense beyond a reasonable doubt." *Williams v. State*, 937 S.W.2d

- 2 -

479, 482 (Tex. Crim. App. 1996) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The jury has the exclusive responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 2013); *Dorsey v. State*, 24 S.W.3d 921, 924 (Tex. App.—Beaumont 2000, pet. ref'd). It is within the jury's providence to "believe or disbelieve all or any part of the evidence presented." *Dorsey*, 24 S.W.3d at 924.

B.    Discussion

Officer Luther testified about the events that took place on the night of May 17, 2011, when he came upon Alvarez-Gomez slumped over the steering wheel of the vehicle that was stopped in a turnaround. Officer Luther identified Alvarez-Gomez as the only person who was in the vehicle. Officer Luther testified that the vehicle was stopped but was not in park. He testified that upon approaching the vehicle he noticed the brake lights were on and observed through the window that the gear shift was not in park. In addition to Officer Luther's testimony, the dash camera video from Officer Luther's patrol car was also admitted into evidence. As a result, not only could the jury see the events as they happened, but they could hear what was said because Officer Luther had his microphone on during the incident. The jury heard Alvarez-Gomez state that he had been drinking. Finally, the evidence included the results from the intoxilyzer analysis which measured the content of alcohol in Alvarez-Gomez's breath. These results showed that Alvarez-Gomez's breath alcohol content was double the legal amount.

C.    Conclusion

Viewing the evidence in the light most favorable to the verdict, the evidence supported the jury's finding that Alvarez-Gomez was driving the vehicle while intoxicated. *Williams*, 937 S.W.2d at 482. Accordingly, we overrule Alvarez-Gomez's first point of error.

## MOTION TO SUPPRESS

In Alvarez-Gomez's second point of error, he complains that the trial court erred in denying his motion to suppress because there was no probable cause to arrest him without a warrant; therefore, the evidence seized during his arrest was inadmissible under the Fourth and Fourteenth Amendments of the U.S. Constitution and Article I, Section 9 of the Texas Constitution.

### A.  Standard of Review

We review a trial court's decision to deny a motion to suppress for an abuse of discretion. *Shepherd v. State*, 273 S.W.3d 681, 684 (Tex. Crim. App. 2008). We must view the record of the hearing in the light most favorable to the trial court's ruling. *Id.* (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)); *Ex Parte Moore*, 395 S.W.3d 153, 158 (Tex. Crim. App. 2013). As a basis for ruling on a motion to suppress, the trial court is entitled to believe or disbelieve any or all of the witnesses' testimony, and we are not at liberty to disturb any finding supported by the record. *Amador v. State*, 275 S.W.3d 872, 878–79 (Tex. Crim. App. 2009). Unless there is a clear showing of abuse of discretion, a trial court's ruling on the admissibility of evidence should not be disturbed. *Moore*, 395 S.W.3d. at 158.

### B.  Discussion

For Officer Luther to have probable cause to arrest Alvarez-Gomez without a warrant, he must have had reason to believe that Alvarez-Gomez was intoxicated while operating a motor vehicle. *Banda v. State*, 317 S.W.3d 903, 911 (Tex. App.—Houston [14th Dist.] 2010, no pet.). A warrantless arrest was justified if Alvarez-Gomez was found in a suspicious place under suspicious circumstances which reasonably show he was driving while intoxicated. TEX. CODE CRIM. PROC. ANN. art. 14.03(a)(1) (West 2013). The question is whether the facts and circumstances within Officer Luther's knowledge at the time of the arrest were sufficient to warrant a prudent man in believing that Alvarez-Gomez was driving while intoxicated. *Carey v.*

- 4 -

*State*, 695 S.W.2d 306, 312 (Tex. App.—Amarillo 1985, no writ.). The trial court implicitly concluded that the State met its burden of proving that, under the totality of the circumstances, Alvarez-Gomez's warrantless arrest was supported by probable cause. Because the motion to suppress was not denied until the end of the trial, we may consider relevant trial testimony and evidence to determine whether the trial court abused its discretion. *Best v. State*, 118 S.W.3d 857, 862 (Tex. App.—Fort Worth 2003, no pet.).

The State argued that Officer Luther had probable cause to believe Alvarez-Gomez was driving while intoxicated. Officer Luther testified that he came upon the vehicle stopped in a turnaround with Alvarez-Gomez slumped over the steering wheel while the transmission was not in park. Officer Luther also testified that he smelled intoxicants, and that Alvarez-Gomez was slow to react, had slurred speech, and could not stand up on his own. The video from Officer Luther's dashboard camera shows that the brake lights were on when Officer Luther approached the vehicle. It also shows Alvarez-Gomez having trouble standing on his own, and the audio indicates his speech is slurred. From this evidence, Officer Luther had knowledge of sufficient facts and circumstances to warrant a prudent man in believing that Alvarez-Gomez had committed the offense of driving while intoxicated.

C.    Conclusion

Viewing the record in light of the trial court's ruling, the trial court did not abuse its discretion in denying the motion to suppress. *Shepherd*, 273 S.W.3d at 684; *Moore*, 395 S.W.3d at 158. Alvarez-Gomez's second point of error is overruled.

### JURY CHARGE

In his third point of error, Alvarez-Gomez contends the trial court erred in denying his requested instruction regarding the exclusionary rule in the court's charge. Article 38.23 of the Texas Code of Criminal Procedure provides:

No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the State of Texas, or the Constitution or laws of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.

TEX. CODE CRIM. PROC. ANN. art. 38.23(a) (West 2013).

A jury instruction under Article 38.23 is only required if there is a genuine dispute about a material fact and this fact is affirmatively contested. *Oursbourn v. State*, 259 S.W.3d 159, 177 (Tex. Crim. App. 2008). When there is no genuine dispute about a material fact, the trial court acts properly in refusing a request for an exclusionary rule instruction. *Best*, 118 S.W.3d at 866.

Alvarez-Gomez contends that the instruction was necessary because the HGN was not properly conducted. At the hearing on whether the instruction should be included, Alvarez-Gomez argued that there was a conflict between the police officer's testimony about how the HGN test was conducted and the defense's testimony about how the HGN test should be conducted according to the National Highway Traffic Safety Administration manual; therefore, the Article 38.23 instruction should be given in the jury charge. The trial court denied his motion stating that Alvarez-Gomez did not provide any evidence that the officer did not follow the proper procedures in conducting the HGN test. After reviewing the testimony, we agree the testimony did not create a genuine dispute about a material fact concerning the validity of the HGN test; therefore, the trial court did not err by denying the requested exclusionary-rule instruction. *Id.* We overrule Alvarez-Gomez's third point of error.

## EX PARTE COMMUNICATIONS

In his final point of error, Alvarez-Gomez contends the trial court erred in conducting ex parte communications with the prosecution. After the jury returned a guilty verdict, the trial court contacted the prosecution without all parties present "to see if the State would be willing to allow

-6-

me to grant a motion for mistrial." The trial court did not agree with the jury's verdict and wanted to grant a mistrial with the understanding that Alvarez-Gomez would be charged with a lesser offense of obstruction of a highway, "which [the trial court] thought was more appropriate for this case since it involved a vehicle stuck in the middle of an intersection." The State declined the offer to allow the trial court to grant a mistrial stating it would not "disparage the verdict of a Texas jury." We must determine whether these communications were ex parte and, if so, whether the communications require a reversal.

A.    Ex parte Communications

An ex parte communication is one that involves fewer than all parties who are legally entitled to be present during the discussion of any matter. *Erskine v. Baker*, 22 S.W.3d 537, 539 (Tex. App.—El Paso 2000, pet. denied). The purpose of prohibiting ex parte communications is to ensure equal treatment of all parties. *Abdygapparova v. State*, 243 S.W.3d 191, 207 (Tex. App.—San Antonio 2007, pet. ref'd). The trial court acknowledged on the record that it contacted the prosecution, without informing Alvarez-Gomez, to see if the State was willing to allow the trial court to declare a mistrial. The trial court believed that a new trial should be granted with Alvarez-Gomez being offered a lesser offense. Because Alvarez-Gomez was not a party to these communications, the communications were ex parte.

B.    Harmless Error

A reviewing court is to disregard nonconstitutional error that does not affect the substantial rights of the defendant. TEX. R. APP. P. 44.2(b); *Ford v. State*, 73 S.W.3d 923, 924–25 (Tex. Crim. App. 2002). In this case the error occurred during the sentencing phase of the trial, and Alvarez-Gomez had elected for the trial court to assess his sentence. When determining whether the defendant's substantial rights are affected by the trial court's error in a nonjury proceeding, we consider whether the defendant had "a right to that which the error denied." *Johnson v. State*, 72

-7-

S.W.3d 346, 348 (Tex. Crim. App. 2002). If it appears that the error did not influence the result, however, or had only a slight effect, we should not overturn a criminal conviction. *Smith v. State*, 290 S.W.3d 368, 375 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd). While it is true that the trial court erred in engaging in ex parte communications that deprived Alvarez-Gomez of his right to be present, the record does not show that the ex parte communications influenced the trial court's sentence. Accordingly, because the ex parte communications did not affect Alvarez-Gomez's substantial rights, we overrule Alvarez-Gomez's final point of error.

## CONCLUSION

Having overruled Alvarez-Gomez's four points of error, we affirm the trial court's judgment.

Marialyn Barnard, Justice

DO NOT PUBLISH



# Fourth Court of Appeals
## San Antonio, Texas

### JUDGMENT

No. 04-14-00198-CR

Jorge **ALVAREZ-GOMEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the County Court at Law No. 6, Bexar County, Texas
Trial Court No. 362070
Honorable Wayne A. Christian, Judge Presiding

BEFORE CHIEF JUSTICE MARION, JUSTICE BARNARD, AND JUSTICE ALVAREZ

In accordance with this court's opinion of this date, the trial court's judgment is AFFIRMED.

SIGNED February 11, 2015.

Marialyn Barnard, Justice

# APPENDIX B

Jorge Alvarez Gomez,
Appellant,
v.

The State of Texas
Appellee.


Court of Appeals No. 04-14-00198-CR

ORDER denying Appellant's Motion for Rehearing and Reconsideration *En Banc*.



# Fourth Court of Appeals
## San Antonio, Texas

March 3, 2015

No. 04-14-00198-CR

Jorge Alvarez **GOMEZ**,
Appellant

v.

**THE STATE OF TEXAS,**
Appellee

From the County Court at Law No. 6, Bexar County, Texas
Trial Court No. 362070
Honorable Wayne A. Christian, Judge Presiding

## O R D E R

Sitting:       Sandee Bryan Marion, Chief Justice
Karen Angelini, Justice
Marialyn Barnard, Justice
Rebeca C. Martinez, Justice
Patricia O. Alvarez, Justice
Luz Elena D. Chapa, Justice
Jason K. Pulliam, Justice

The court has considered the Appellant's Motion for Rehearing and Reconsideration En Banc, and the motion is DENIED.

_Marialyn Barnard_
Marialyn Barnard, Justice

IN WITNESS WHEREOF, I have hereunto set my hand and affixed the seal of the said court on this 3rd day of March, 2015.

_Keith E. Hottle_
Keith E. Hottle
Clerk of Court

# APPENDIX C

Jorge Alvarez Gomez,
Appellant,
v.

The State of Texas
Appellee.

Cause No. 04-14-00198-CR

Excerpts from the trial courts final hearing pertaining to the negotiation with the District Attorney as to changing of the charge.  The trial court believed that the jury had it wrong.

REPORTER'S RECORD          (ORIGINAL)

VOLUME 1 OF 1 VOLUMES

FILED IN
4th COURT OF APPEALS
SAN ANTONIO, TEXAS
9/7/2014 9:35:36 AM
KEITH E. HOTTLE
Clerk

TRIAL COURT CAUSE NO. 362078

THE STATE OF TEXAS          *          IN THE COUNTY COURT

VS.          *          AT LAW NO. 6

JORGE ALVAREZ-GOMEZ          *          BEXAR COUNTY, TEXAS

***************************
SENTENCING
FEBRUARY 28TH, 2014
***************************

A-P-P-E-A-R-A-N-C-E-S:

          MS. COURTNEY SCIPIO and
          MR. ANDREW FIELDS
          Assistant Criminal District Attorneys
          Paul Elizondo Tower 1
          101 West Nueva
          San Antonio, Texas  78205
          Phone: (210) 335-2311
          ATTORNEYS FOR THE STATE

          MR. VICTOR VALDES
          111 Soledad Street, Suite 300
          San Antonio, Texas  78205
          Phone: (210) 229-9652
          SBTN: 20424500
          ATTORNEY FOR DEFENDANT

          On the 3rd, 4th, 5th and 6th days of December, 2013, and the 28th day of February, 2014, the following proceedings came on to be heard in the above-entitled and numbered cause before the HONORABLE WAYNE A. CHRISTIAN, PRESIDING JUDGE, held in the County Court at Law No. 6, San Antonio, Bexar County, Texas.

          Proceedings reported by machine shorthand.

VOLUME 6 OF 7 VOLUMES

Page

Proceedings..........................................3

Court gives chronology of trial......................3

Court explains attempt to ask State if they would
be willing to allow Court to grant mistrial..........3

Court explains numerous attempts in trying to
Contact Defense attorney Victor Valdes and
Defendant............................................5

Court sends out setting form for sentencing..........5

Defense attorney Victor Valdes was absent from
sentencing because of being in a seminar.............6

Court sentenced in absentia..........................7

Court informs defendant what he has to do............8

State's recommendation on punishment................11

STATE'S EVIDENCE

| STATE'S WITNESSES: | DE | CE | RD | RC |
|---|---|---|---|---|
| (No witnesses.) | | | | |

DEFENSE'S EVIDENCE

| DEFENSE'S WITNESSES: | DE | CE | RD | RC |
|---|---|---|---|---|
| (No witnesses.) | | | | |

Proceedings concluded...............................11

Court Reporter's Certificate........................12

E X H I B I T S

| STATE'S: | | | |
|---|---|---|---|
| NO. DESCRIPTION | MARKED | OFFERED | ADMITTED |
| (No exhibits.) | | | |

| DEFENSE'S: | | | |
|---|---|---|---|
| NO. DESCRIPTION | MARKED | OFFERED | ADMITTED |
| (No exhibits.) | | | |

P R O C E E D I N G S

(Open court, defendant present.)

THE COURT: This is Cause 362070, The State of Texas versus Jorge Alvarez-Gomez, who is charged by information and complaint with the offense of driving while intoxicated, alleged to have occurred May 17th, 2011. Defense requested a jury trial, which was held on December 3rd through 6th, 2013. The jury finding the defendant guilty of the offense of driving while intoxicated. Defense filed a motion for a new trial, which the Court respectfully denied on February 7th, 2014. Numerous attempts were made -- or, actually, the Court deferred sentencing in an attempt to work something out with the District Attorney's Office, that was not able to be worked out.

MR. VALDES: And that you spoke with Mary Green.

THE COURT: I spoke with my two prosecutors, Andrew Fields and Courtney Scipio, and I spoke to their supervisor, Mary Green.

MR. VALDES: To see if it's possible to --

THE COURT: And what I was attempting to do at that point was to see if the State would be willing to allow me to grant a motion for mistrial,

based exclusively on the fact that I personally did not agree with the jury's verdict. However, the law does not account for that being sufficient for me to grant a motion for a new trial or override the jury's verdict, in my opinion, and I was going to attempt to see if the District Attorney's Office would be willing to allow me to grant a motion for a new trial, with the understanding that they would offer Mr. Alvarez-Gomez a lesser offense of obstruction of a highway, which I thought was more appropriate for this case since it involved a vehicle stuck in the middle of an intersection. Both my assigned trial court prosecutors and Ms. Green were very nice and professional about it, but they said they're not going to disparage the verdict of a Texas jury, and that all of the evidence was presented to the jury and that was their finding.

Mr. Field's, is that more or less accurate?

MR. FIELDS: As far as I know, yes, sir.

THE COURT: Okay.

I want to advise Mr. Alvarez-Gomez that, in my opinion, you got as fair a trial as you can get. You have a very competent attorney. We had to jump through a few hoops to get your witness there, who was testifying that you were not driving the automobile and

that he had left you intoxicated in the car and that you weren't doing anything accept being in the car waiting for him to get back with jumper cables, if I recall correctly, to start the car, which was stalled in an intersection at a red light or something, and it appears the jury did not believe that testimony, and it's not up to me what the jury believes or doesn't believe. So I feel bad for Mr. Alvarez-Gomez, but I'm bound by the law. That's kind of where we're at.

So that being said, we attempted to contact both Mr. Alvarez-Gomez and Defense counsel numerous times on the phone and by texting, and me personally trying to get Mr. Valdes to get in contact with me. Apparently everybody was busy because I -- and I wanted to relate to them that I was going to have to have a sentencing hearing. Ultimately I was not able to contact them, so I had Ms. Benavidez, as court coordinator, send out an official setting form setting this for sentencing on February 25th, 2014. And I assume you got that, Mr. Valdes?

MR. VALDES: Yes, Your Honor, but --

THE COURT: Because the defendant showed up in the morning --

MR. VALDES: Yes, Your Honor, because I --

THE COURT: -- but you weren't here.

MR. VALDES: No, because I called him to tell him to show up here, to report.

THE COURT: He showed up in the morning, and we'll ask Ms. Benavidez, but my understanding is, he was told to come back at 1:30 to give us time to contact you to be here also, and he didn't show up at 1:30.

MR. VALDES: I understand, Your Honor, but --

THE COURT: No hard feelings. I'm not holding that against anybody.

MR. VALDES: No, no, but I was in a seminar.

THE COURT: Marines are late all the time anyway.

MR. VALDES: I was in a seminar at Corpus Christi.

THE COURT: And once again, no hard feelings.

MR. VALDES: I'm sorry.

THE COURT: It's just we needed to get this done and that's how we did it.

MR. VALDES: Yes, sir, and that's why we're here.

THE COURT: And when neither Defense counsel nor defendant were present, I sentenced in absentia, and I followed the jury's verdict and found Mr. Alvarez-Gomez guilty of the offense of driving while intoxicated, first offense. I sentenced him to six months in the Bexar County Jail, probated for six months, a $500 fine, probating all of that, plus court costs, 48 hours community service, probating all of that based on his extensive military service as a combat marine, DWI education course he's required to take to keep his driver's license, DWI Victim Impact Panel, which takes approximately two hours, I think, to finish, and an outpatient drug evaluation through either Elite counseling or the Veterans Administration. I assume you're still eligible for that.

THE DEFENDANT: Yes, sir.

THE COURT: And whatever the professionals in that category tell me -- if you need outpatient counseling, I'm going to order it, if that's what they tell me. If they tell me you don't need it, I'm not going to order it.

THE DEFENDANT: Yes, Your Honor.

THE COURT: It's just that simple. I initially ordered you to report to the adult probation

department at 9 o'clock a.m. -- I'm sorry, Marine, 0900 hours on February 26th, 2014. You weren't able to do that. No problem. We have since issued a warrant for you, but you're here, so no problem. We're going to recall the warrant, and I'm going order you, in the nicest possible way, to go to probation and sign in today.

THE DEFENDANT: Yes, Your Honor.

THE COURT: My understanding -- and I've also found you indigent for purposes of the state surcharge. Otherwise you would have to be paying $3,000 to keep your driver's license. Okay?

THE DEFENDANT: Yes, sir.

THE COURT: I've annotated in the Court file: Defense counsel provided proper legal notice of sentencing hearing on 2-7-2014, and defendant further spoke to Pat Benavidez on the -- I can't even read my writing -- on the morning on 2-25-2014 and was specifically told to be back in the courtroom at 1:30 p.m. Defense counsel repeatedly refused to return phone calls.

No hard feelings. That's just on the record of how we tried to contact you. You're here, so we're all happy.

So that being said, I need Mr. Alvarez-

Gomez to go report in to probation, with the understanding that once he pays the monies that are due -- and I think that's going to be, according to the front of this jacket, $462 or $427. Toni in the back can tell you the exact amount. That's his court costs. Once that is paid -- there's also a $25 a month supervisory fee, and I'm going to waive that. Once he's done that, I'm going to allow him to answer by mail for six months, which means he doesn't have to go to probation after today. They'll give you a form and allow you to answer by mail. As a matter of fact, I'm just going to order that he can answer by mail. That's the best way to do that. You're going to have to do a DWI education course, and that can be taken online.

THE DEFENDANT: Yes, sir.

THE COURT: And I don't know what it costs, but not much. You need that to keep your driver's license. This Victim Impact Panel, you're going to have to talk to your probation officer or Ron today about how to set up for that. But it's only two hours once you start.

THE DEFENDANT: Yes, sir.

THE COURT: So as soon as you get that out of the way, that's great. But technically you got six months to do that.

So I tried to make it as kind and gentle on him as I possibly can. In 34 years of doing this, I've never sentenced anybody this meek and mild. And the prosecutor will confirm that. And I'm recalling warrants. And it is now 10:30, so I'm going to say at 11 o'clock? Or anytime today. Is this afternoon better for him? What's better?

MR. VALDES: To report to probation?

THE COURT: Yes, sir.

MR. VALDES: Yeah, this afternoon. Yes, sir.

THE COURT: Okay. 1:30, 1330 your time.

THE DEFENDANT: I can report right after this.

THE COURT: Well, you can go now. You know, anytime up to or including 1330. Before or at 1330 hours today.

MR. FIELDS: So, Judge, was this the sentence that was already given the last time?

THE COURT: The sentence that I gave?

MR. FIELDS: Yes.

THE COURT: Six months over six months --

MR. FIELDS: That was already recommended by the State?

THE COURT: I didn't even ask the State a

recommendation. I just sentenced him. But I'll be happy to hear the State's recommendation for the record.

MR. FIELDS: I was just going to recommend -- and what's different from yours is a $700 fine, a hundred and eighty days over two years, and 60 hours of community service, in addition to the ignition interlock. I didn't hear you say that.

THE COURT: Thanks.

Okay. Anything further from the State or the Defense on Mr. Jorge Alvarez-Gomez, United States Marine Corps?

MR. FIELDS: No, Your Honor.

THE COURT: Best of luck, sir.

THE DEFENDANT: Thank you, Your Honor.

THE COURT: I'm sorry it worked out this way. Your attorney did the best job he could, and the State had to do their job, and the Defense had to do theirs, and that's what the jury came back with. That's the way the cookie crumbles.

MR. VALDES: May I be excused, Your Honor?

THE COURT: You bet. Thank you.

MR. VALDES: Thank you, Your Honor.

(Sentencing proceedings concluded.)

STATE OF TEXAS )

COUNTY OF BEXAR )

     I, MICHAEL A. STACHOWITZ, Court Reporter in and for the County of Bexar, State of Texas, do hereby certify that the above and foregoing contains a true and correct transcription of the entire sentencing proceedings in the above-styled and numbered cause, all of which occurred in open court and were reported by me.

     I further certify that this Reporter's Record of the proceedings truly and correctly reflects the exhibits, if any, admitted by the respective parties.

     I further certify that the total cost for the preparation of this Reporter's Record is _____.

     WITNESS MY OFFICIAL HAND this the 5th day of May, 2014.

/S/Michael A. Stachowitz
MICHAEL A. STACHOWITZ
Official Court Reporter, County Court 6
Texas CSR 2174
Expiration Date: 12-31-2014
Bexar County Justice Center, 2nd Floor
100 Dolorosa
San Antonio, Texas 78205
(210) 335-1605

Print this page

# Envelope 5146506

## Case Information

| | |
|---|---|
| Location | Court Of Criminal Appeals |
| Date Filed | 05/04/2015 05:18:40 PM |
| Case Number | |
| Case Description | |
| Assigned to Judge | |
| Attorney | Victor Valdes |
| Firm Name | Law Office Of Victor M. Valdes |
| Filed By | Victor Valdes |
| Filer Type | Not Applicable |

## Fees

| | |
|---|---|
| Convenience Fee | $0.09 |
| Total Court Case Fees | $0.00 |
| Total Court Filing Fees | $0.00 |
| Total Court Service Fees | $0.00 |
| Total Filing & Service Fees | $0.00 |
| Total Service Tax Fees | $0.00 |
| Total Provider Service Fees | $2.99 |
| Total Provider Tax Fees | $0.25 |
| Grand Total | $3.33 |

## Payment

| | |
|---|---|
| Account Name | Victor M. Valdes |
| Transaction Amount | $3.33 |
| Transaction Response | |
| Transaction ID | 8447266 |
| Order # | 005146506-0 |

## Petition for Discretionary Review

| | |
|---|---|
| Filing Type | EFile |
| Filing Code | Petition for Discretionary Review |
| Filing Description | Petition for Discretionary Review |
| Reference Number | 602077 |
| Comments | |
| Status | Rejected |

## Fees

| | |
|---|---|
| Court Fee | $0.00 |
| Service Fee | $0.00 |

## Rejection Information

| Rejection Reason | Time | Rejection Comment |
|---|---|---|
| Other | 05/06/2015 10:25:31 | The petition for discretionary review does not contain the identity of Judge, Parties and Counsel [Rule 68.4(a)]. You have ten days to tender a corrected petition for |

AM          discretionary review.

## Documents

*Lead Document*          Jorge Alvarez Gomez Petition PDR.pdf          [Original]